Richard L. Stone (S.B. No. 110022)
David Ben-Meir (S.B. No. 192028)
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
rlstone@hhlaw.com
dhben-meir@hhlaw.com

Attorneys for Plaintiffs
ODS TECHNOLOGIES, L.P., d/b/a TVG NETWORK and ODS PROPERTIES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ODS TECHNOLOGIES, L.P., d/b/a TVG NETWORK, a Delaware limited partnership, and ODS PROPERTIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>MAGNA ENTERTAINMENT CORPORATION, a Delaware corporation; and HRTV, LLC, a Delaware limited liability company; XPRESSBET, INC., a Delaware corporation,<br><br>Defendants. | Case No.: CV 07-03265 DDP (RCx)<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS OR CERTIFICATION THAT PRODUCTION IS COMPLETE AND (2) FURTHER INTERROGATORY RESPONSE OR CERTIFICATION THAT THE RESPONSE IS COMPLETE**<br><br>Date: November 5, 2008<br>Time: 9:30 am<br>Judge: Hon. Rosalyn M. Chapman<br><br>Discovery Cutoff: November 26, 2008<br>Pretrial Conference: July 13, 2009<br>Trial Date: July 21, 2009 |
| AND RELATED COUNTERCLAIMS | |

## I. Introduction

Having twice attempted, without success, to bring the instant motion, Defendants are once again pursuing what essentially amounts to wild goose chase. Defendants are requesting the Court to compel ODS to disclose highly confidential, proprietary source code for its interactive wagering products and services, including its website ("TVG Website"), without offering *any* legitimate reason why they are entitled to this information. The source code is a valuable trade secret subject to a particularly high level of protection under the Federal Rules of Civil Procedure, and Defendants have not met their burden of showing that it is relevant and necessary to their defense in this case. Contrary to their assertions, (1) whether or not the source code "enabled" Plaintiffs' products to function is irrelevant to the issue of whether Plaintiffs' *patents* satisfy the statutory test for enablement; (2) what *parts* of Plaintiffs' products derived from pre-existing products is irrelevant to issues of validity, since Plaintiffs' patents cover not the functionality of individual parts of their wagering system but the interface connecting them; (3) Defendants do not need hundreds of thousands of lines of purely technical code in order to determine who wrote certain portions of it, and in any event have failed to elucidate why such information is relevant to the validity or ownership of Plaintiffs' patents; and (4) the source code would not be adequately protected under the existing Protective Order, given that Defendants are direct competitors with Plaintiffs and allowing them access to the code would incur too great a risk of inadvertent disclosure. In sum, Defendants have no grounds for compelling the production of massive amounts of code that comprises an extremely sensitive trade secret for Plaintiffs and yet would not advance Defendants' case in the slightest.

Equally meritless is Defendants' demand for a further response to Interrogatory No. 4, which asks Plaintiffs to identify all products that they contend embody the claims of the patents in suit. Plaintiffs contend that the current version of the TVG Website embodies the claims of the patents in suit, and make no

1

contentions as to any other products. To the extent Defendants seek to claim that a particular product does or does not embody the patents, it is for Defendants, not Plaintiffs, to conduct the analysis to support such a claim.

## II. Defendants Have Not Met the Legal Standard for Disclosing Plaintiffs' Trade Secret Source Code.

It is undisputed that the source code at issue in this motion is highly sensitive and confidential trade secret information. Access to it, even within ODS, is extremely limited, and it has never been disclosed outside the company. *See* Declaration of John Hindman ¶¶ 3-4. The reasons for this careful protection are obvious: revelation of the code to Plaintiffs' competitors would facilitate copying and use of Plaintiffs' innovations, which would cause the competitors to benefit unfairly from the substantial research and development undertaken by Plaintiffs and place Plaintiffs at a competitive disadvantage. Consistent with these concerns, Fed. R. Civ. P. 25(c)(7) provides that where a party seeks discovery of a trade secret such as Plaintiffs' source code, that party bears the burden of showing "that the trade secret sought is relevant and necessary to the prosecution or defense of the case before a court is justified in ordering disclosure." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 459 (C.D. Cal. 2002) (Chapman, J.) (citing *Hartley Pen Co. v. United States District Court*, 287 F.2d 324, 331 (9th Cir. 1961)).

Defendants, however, have failed to meet this heavy burden. They first contend, without any discernible factual support, that the source code would reveal whether the code for the ODS's 1995 set-top product "enabled" an Internet wagering product to function. Even if this were true, it still does not establish that discovery of the code is relevant, much less necessary, to Defendants' case. Defendants appear to be laboring under a fundamental misunderstanding of the legal concept of enablement, which asks whether the written description in a *patent specification* can "enable any person skilled in the art to which [the invention] pertains, or with which it is most nearly connected, to make and use the same." 35

2

U.S.C. § 112.  This is a distinct and entirely unrelated inquiry from whether the source code for an ODS product enables that product to function in a particular way.  It follows that Defendants' other questions related to that code, such as the differences in the code for later products, the complexity of the code, etc., are similarly off-point, and are certainly not necessary to prove or disprove enablement.

Defendants also assert that they need the source code to determine "what aspects of the ODS product derived from preexisting products," arguing that this information "bears directly on obviousness, adequate disclosure of prior art, and invalidity generally."  The Court has held that such general, conclusory assertions are not sufficient to meet the burden for discovery of trade secrets.  *See DIRECTV*, 209 F.R.D. at 460.  Indeed, it is unclear what bearing the incorporation of elements of preexisting products in Plaintiffs' products could possibly have on issues relating to validity, given that the patents in suit cover the *user interface* that brings together all the data and functions that could previously only be obtained from separate sources.  In other words, it is irrelevant whether some of these individual functions may have been derived from preexisting systems, since the invention at issue is not these individual functions but the interface that aggregates and links them together.

Defendants further contend that the source code "may contain initials or other indicia identifying parts of ODS's product developed by [Steven] Boggs or other unnamed inventors."  Joint Stipulation at 22.  Put another way, Defendants believe that examining the code would reveal who wrote certain portions of the code.  Yet they offer no explanation of what relationship or relevance this information would have to their case other than the broad statement that it would "bear on whether the patents were validly obtained[] and whether ODS is even the true owner of the patents-in-suit."  Again, the law is clear that broadly conclusory statements regarding relevance do not meet the burden required for disclosure of trade secrets.  *See Pioneer Hi-Bred Int'l, Inc. v. Holden's Foundation Seeds, Inc.*, 105 F.R.D. 76, 82 (N.D. Ind. 1985).  Even assuming *arguendo* that the question of

3

who wrote what parts of ODS's source code was somehow relevant to Defendants' case, they have not shown why production of the source code is necessary to obtain this information. Defendants could have served a simple interrogatory to the same end, and the fact that they have not done so is no fault of Plaintiffs.

In short, Defendants have utterly failed to demonstrate that Plaintiffs' source code is relevant and necessary to their case. Their argument that the Protective Order entered by the Court offers sufficient protection for the source code likewise fails. Plaintiffs and Defendants are *direct competitors* in an industry in which constant innovation, research, and development are key to economic survival. Under such circumstances, the current protective order is a wholly deficient safeguard against the inadvertent disclosure of one of Plaintiffs' most sensitive trade secrets. *See, e.g., Bryant v. Mattel, Inc.*, 2007 WL 5430888, *5 (C.D. Cal. May 18, 2007); *Rodriguez v. West Publishing Corp.*, 2006 WL 2459098, *3 (W.D. Wash. Aug. 22, 2006). Even if the source code were designated Confidential under the Order, Defendants' litigation counsel, including their in-house counsel, along with their staff and support, would still have access to it. Nor can Plaintiffs designate the code as Outside Attorney Eyes Only, since the Order limits that designation to information the disclosure of which may cause harm to a *third* party.

Finally, Defendants do not appear to realize or acknowledge the sheer magnitude of the discovery they are seeking or its fundamental uselessness for their purposes. They are asking for hundreds of thousands of lines of code that are comprehensible only to specialized technicians. Compelling production of such an enormous, unfiltered and unfilterable mass of arcane data is an absurdly inefficient and unnecessary means of ascertaining the few bits of information Defendants have pinpointed, even assuming the latter had any relevance to Defendants' case. There can be no doubt that sifting through and interpreting Plaintiffs' source code would take Defendants weeks, if not months, and certainly far more time than is available under the already-extended discovery deadlines. Even if Defendants had good

\\\LA - 097424/000072 - 405980 v1

1  reason to demand the source code (which they do not), they have plainly wasted too
2  much time trying to make this motion, first attempting to file it without meeting and
3  conferring, and then untimely filing it on their second attempt.  They should not be
4  permitted to delay this action any further simply because they may be searching
5  fruitlessly for a handful of needles in a sea of haystacks.

### III. **Plaintiffs Have Adequately Responded to Interrogatory No. 4.**

Defendants' Interrogatory No. 4 is a *contention* interrogatory.  It asks Plaintiffs to "[i]dentify all products or services that you contend practice or embody (or have at any time practiced or embodied) any invention claimed in the patents-in-suit, including any products or services made by plaintiff or third parties, but excluding any products or services of defendants."  This Interrogatory was originally served over one year ago, on August 28, 2007, when the case was still at a very early stage of litigation, as was Plaintiffs' original response, which was served on September 27, 2007.  Plaintiffs have responded that the TVG Website practices and embodies the patents in suit, and that "ODS does not make any contentions with respect to whether any other ODS products or services embody or have embodied the patents."  Declaration of Amy M. Gallegos, Ex. C.  To the extent that Defendants continue to press for a further response, the interrogatory simply does not obligate Plaintiffs to review every single one of their products and make a binding statement as to whether or not they embody the patents in suit.  Plaintiffs' action does not depend on such an analysis, and if Defendants wish to argue certain products do or do not embody the patents, it is up to Defendants, not Plaintiffs, to perform that analysis.

Date:  October 22, 2008          HOGAN & HARTSON L.L.P.

By: /s/
Amy M. Gallegos
Attorneys for Plaintiffs and Counterclaim-defendant ODS TECHNOLOGIES, L.P., d/b/a TVG NETWORK and ODS PROPERTIES, INC.