DARRYL M. WOO (CSB NO. 100513)
E-Mail: dwoo@fenwick.com
ILANA S. RUBEL (CSB No. 221517)
E-Mail: irubel@fenwick.com
CAROLYN C. CHANG (CSB. 217933)
E-Mail: cchang@fenwick.com
MASHHOOD RASSAM (CSB No. 240834)
E-Mail: mrassam@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendants and Counterclaimants
MAGNA ENTERTAINMENT CORP., XPRESSBET, INC., AND HRTV, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ODS TECHNOLOGIES, L.P., d/b/a TVG NETWORK, a Delaware limited partnership, and ODS PROPERTIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MAGNA ENTERTAINMENT CORP., a Delaware corporation; HRTV, LLC, a Delaware limited liability company; XPRESSBET, INC., a Delaware corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV-07-03265 DDP (RCx)<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM RE: DEFENDANTS' MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS OR CERTIFICATION THAT PRODUCTION IS COMPLETE; AND (2) FURTHER INTERROGATORY RESPONSE OR CERTIFICATION THAT THE RESPONSE IS COMPLETE**<br><br>**Declaration of Ilana Rubel filed concurrently herewith**<br><br>Date: Off-calendar<br>Time:<br>Courtroom: 23<br><br>Discovery Cutoff: November 26, 2008<br>Pretrial Conference: July 13, 2009<br>Trial Date: July 21, 2009<br><br>[REDACTED] |

Pursuant to Civil Local Rule 37-2.3, Defendants[1] submit this Supplemental Memorandum in support of their Motion to Compel.

## I.     Defendants Have Established The Relevance Source Code Being Sought.

Contrary to Plaintiffs' contentions, the source code sought by Defendants is highly relevant to core issues in this case, and no adequate substitute has emerged. First, as to the critical issue of whether Plaintiffs' patent specification enabled an Internet product, Plaintiffs have distorted Defendants' position by suggesting their only rationale for seeking code is to ascertain whether ODS's 1995 cable set-top wagering product was Internet-ready. *See* Jt. Stip.at 28. Rather, relevance is driven by precisely the standard that Plaintiffs advance—the need to determine whether the written specification enabled such capability. Plaintiffs do not and cannot dispute that the '068 specification lacks any mention of the Internet or how to develop an Internet wagering product. Hence, the enablement inquiry must address whether, as of the 1995 filing date, one of ordinary skill in the art could have readily developed (without undue experimentation) an Internet wagering product using available technologies, despite the '068's silence regarding the Internet. Here, there is very probative evidence of this point: Plaintiffs' source code.

[REDACTED] Supp. Rubel Decl. ¶¶ 5-7; Exs. C-E (Ramsey 63:11-20; Reneau 237:4-8; McNutt 89:25-90:12) Plaintiffs, then, present an ideal test case as to whether the '068 specification enabled the newly claimed embodiment: ODS sought to build an Internet wagering product with video, they employed numerous individuals "of skill in the art" (notably, the 10 inventors named on the '068 patent), and they were apprised of the teachings of the '068 patent specifications,.

In exploring whether the '068 specification enabled a video-capable Internet wagering product, there are a host of extremely pertinent questions that Defendants should be permitted to delve into: Following the '068 filing in 1995, how much

---

[1] Capitalized terms herein shall have the same meaning as in the October 14, 2008 Joint Stipulation.

| DEFENDANTS' SUPP. MEMO. RE: MOTION TO COMPEL | 1 | CASE NO. CV-07-03265 DDP (RCX) |
|---|---|---|

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

new code did ODS have to develop to attain Internet functionality for the roll-out of their 1999 Internet product?[2] How complex was that code? How much time and expertise was required? What development tools were used to achieve Internet functionality? Were those tools available in 1995? How much Internet capability existed in the 1995 cable version of ODS's product? These core questions and more could be answered by the source code for the products at issue. Plaintiffs brush these queries off as being of "marginal, if any, relevance," but they in fact cut to the heart of enablement, addressing the feasibility and degree of effort required to build a video-streaming Internet wagering product given the '068 specification.

Equally without merit is Plaintiffs' suggestion that source code is irrelevant to invalidity, obviousness and sufficiency of disclosure of prior art. Plaintiffs now claim that because their patents cover only the connecting interface and not the components of their wagering system, Defendants may not explore whether the components consist of pre-existing technology. Jt. Stip at 29. As an initial matter, Plaintiffs do assert claims that pertain to wagering system components. Supp. Rubel Decl. ¶ 9, Ex. F (2nd Supp. Resp. to Rog. No. 2). However, even accepting ODS's characterization, their argument fails. Evidence to date shows that ODS's purportedly novel wagering "interface" is largely comprised of pre-existing technology. *See* Jt. Stip. at 21-22. Defendants are entitled to examine those component technologies, how much claimed functionality they provide, whether they should have been disclosed as prior art, and to explore whether their combination would have been obvious. Plaintiffs have unfairly hampered Defendants' invalidity analysis by withholding source code that likely shows what and how much functionality was borrowed from where.[3]

---

[2] ████████ Supp. Rubel Decl. Ex. E (McNutt 187:16-203:7). ████████

[3] These arguments apply with equal force to the '354 patent. Unlike the '068 family, this patent relates to geolocational functionality. ████████

1   Finally, as to inventorship, Plaintiffs do not dispute that their source code
2   likely reveals its authors, nor do they dispute that the source code is therefore
3   probative of a disputed issue in the case. Instead, they contend that Defendants
4   should not be permitted to access or examine this code because they could seek
5   such information by interrogatory. But this is not the standard for discovery in a
6   civil case. Litigants are not required to take their opponents' word on disputed
7   issues in lieu of a review of existing and available underlying evidence.

## II. Plaintiffs' Source Code Would Be Adequately Protected.

Plaintiffs' position that the Protective Order to which they agreed in this case is insufficient to protect their source code is baffling. First, notwithstanding the fact that the parties are competitors, Plaintiffs evidently expected Defendants to accept a parallel risk of production of their source code, produced upon request many months ago. Yet, ODS now asserts that they should not have to play by the same rules. This disparate view of the parties' obligations is surprising given that much of the requested ODS source code pertains to products released a decade ago, whereas the code already produced by Defendants pertains to current product, raising if anything more competitive concerns on Defendants' part. Plaintiffs have articulated no reason to conclude that Defendants would not abide by the terms of the Protective Order. Having initiated this high stakes litigation, Plaintiffs must advance much more than bare conjecture to justify materially impairing their opponents' defense by withholding highly relevant evidence.[4]

---

See, *e.g.*, Supp. Rubel Decl. Ex. E, ¶ (McNutt 187:16- 203:7)

[4] The cases cited by Plaintiffs for the proposition that they should not have to produce trade secret information are uniformaly inapposite. In *Rodriguez v. West Publishing Corp.*, 2006 WL 2459098 (W.D. Wash. 2006), it was only as to documents of "minimal relevance" that the court denied the motion to compel; production was compelled as to relevant confidential documents notwithstanding the requestor's competitor status. In *Bryant v. Mattel, Inc.*, 2007 WL 5430888 (C.D. Cal. May 18, 2007), despite all protestations, the Court found ultimately that the requested material was relevant and must be produced, albeit with heightened protection in place. *Id*. at *7-8. Finally, in *Dorel Juvenile Group v. Summer Infant, Inc.*, 2006 WL 2927321, the discovery sought was from a non-party, a factor the Court cited repeatedly in its decision to deny a motion to compel as to a limited category of documents for which the Court found there had not been a sufficient showing of a good faith basis for the request. *Id*.

DEFENDANTS' SUPP. MEMO. RE: MOTION TO COMPEL     3     CASE NO. CV-07-03265 DDP (RCX)

Second, Plaintiffs complain that their code cannot be designated Outside Attorneys Eyes Only (OAEO) and thus would be provided to Defendants' in-house counsel. Jt. Stip at.30. But this is not true. The parties have previously agreed to treat certain materials as OAEO, and Plaintiffs have in fact already extensively availed themselves of this option. Supp. Rubel Decl. ¶ 2, Ex. B. Plaintiffs never asked that their code be designated OAEO, an arrangement to which Defendants are fully amenable. Production of confidential source code is routine in technology cases, and there is simply no reasonable basis for ODS's flat refusal to produce key evidence, or even to engage in discussion of modified security measures, as was the solution arrived at in the *Bryant* case that Plaintiffs cite. 2007 WL 5430888 at *7.

### III. Defendants Are Entitled To A Further Response To Interrogatory No. 4.

The burden rests with Plaintiffs to justify their refusal to substantively respond to Interrogatory No. 4. *Cable & Computer Tech. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997). Plaintiffs have not met this burden, instead arguing that they now contend that only the ODS website, www.tvg.com, embodies the patents-in-suit. But this is not what Plaintiffs' Response says. Rather, Plaintiffs still vacillate so as to keep their options open, stating that "ODS continues to investigate whether prior versions of the TVG website existed and, if so, whether those versions also embody the asserted patents." Jt. Stip. at 17.

The information sought relates directly to scope of the invention, conception, and reduction to practice. Plaintiffs can hardly claim this request is premature; they point to no remaining discovery that would shed new light on this issue. Plaintiffs know all they are going to know about their products and patents. It is time to state their position on embodiment so that in the final days of discovery, Defendants have an opportunity to guide their own expert analysis and defense efforts.

It is that kind of definitive statement that the court ordered in *Fresenius* in response to a similar interrogatory seeking "identification of each product . . . embodying any invention claimed by the patents in suit" where the response "did

| DEFENDANTS' SUPP. MEMO. RE: MOTION TO COMPEL | 4 | CASE NO. CV-07-03265 DDP (RCX) |

1  not make it clear that it is identifying all such products as required by the
2  interrogatory." *Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*, 224 F.R.D.
3  644, 652 (N.D. Cal. 2004). Plaintiffs conspicuously ignore *Fresenius,* focusing
4  instead on inapposite cases discussing the limitations of contention interrogatories
5  brought early in the case. *See, e.g., In re Convergent Technologies Securities*
6  *Litigation*, 108 F.R.D. 328, 338 (N.D. Cal. 1985). Any such time-based rationale
7  has long expired—Plaintiff has had a year and a half to determine what products
8  embody the patents-in-suit. *Tennison v. City & County of San Francisco*, 226
9  F.R.D. 615, 618 (N.D. Cal. 2005) (as discovery had significantly progressed, "the
10 disfavored status that normally applies to early contention interrogatories" is
11 inapposite). Plaintiffs must supplement their response to include all embodiments
12 or affirmatively state that only the current TVG website embodies the inventions.

### IV. Defendants Should Be Granted Relief For Plaintiffs' Continued Failure To Produce Relevant Material

Plaintiffs have offered no rebuttal to the need for new depositions as to the source code if produced, nor any reason why they should not pay expenses caused by their stall tactics. Defendants have crossed the country taking a 30(b)(6) as well as ten inventor depositions. Rubel Decl. ¶ 10. Had Plaintiffs timely produced their code as requested, all necessary questions relating to that code could have been asked in those depositions. Instead, many depositions may now have to be retaken. As it is solely Plaintiffs' obstinacy that created this regrettable situation, Plaintiffs should bear any related costs of further discovery if source code is in fact produced.

Dated: October 22, 2008        FENWICK & WEST LLP

By: _____/s/ Ilana Rubel_____
                Ilana Rubel

Attorney for Defendants and Counterclaimants
MAGNA ENTERTAINMENT CORP.,
XPRESSBET, INC., AND HRTV, LLC

DEFENDANTS' SUPP. MEMO. RE: MOTION TO COMPEL        5        CASE NO. CV-07-03265 DDP (RCX)